## GREAT AMERICAN INS. CO. v. HARRINGTON.

No. 17666.    Opinion Filed Sept. 20, 1927.

(Syllabus.)

1. **Insurance—Action on Hail Policy—Waiver by Insurer of Prescribed Proof of Loss.**

In a suit upon a hail insurance policy, where insured, immediately upon loss, notified, in writing, the company of such loss, the nature and extent thereof, and the company, within four days, through its adjuster, made an investigation of the crop, and thereupon informed the insured that no loss had been sustained and denied liability on that ground alone and did not suggest any defect in or the absence of proof of loss as a ground for such refusal to pay, the company thereby waived the right to insist upon the failure of the insured to make more exact proof of loss within 60 days according to the terms of the policy.

2. **Same—Sufficiency of Petition Alleging Waiver.**

Where the petition of plaintiff alleged the insurance of his crop by defendant under a policy of hail insurance and that the crop during the continuance of said policy was damaged by hail to such an extent as to bring it within the terms of the policy, that the insured immediately gave written notice of such loss, nature and extent thereof to the company, which immediately thereafter made an inspection of the crop, and further, that a second notice by registered mail was sent the company and a second investigation of the loss was made by the company's adjuster, and that the company thereupon immediately denied liability upon the sole ground that the crop of plaintiff had not been damaged by hail, and alleging further that the plaintiff did not make proof of loss within the 60 days for the reason that the company denied liability solely upon the ground that no damage had been suffered by his crop, and but for that fact proof of loss would have been made within the 60 days, and that the insured had complied with all the requirements of the policy, such a petition is good against a demurrer grounded upon the contention that no proof of loss was made within the 60 days.

3. **Same—Waiver Becoming Question for Court.**

Where, in an action on an insurance policy, the plaintiff alleged certain specific acts of defendant constituting a waiver of proof of loss within the 60 days as provided by the policy, and where there is proof reasonably tending to establish such facts, the question of waiver becomes an issue to be passed upon by a jury; but where the defendant in such case, in the introduction of his evidence, specifically admits, without qualification, the very acts pleaded by plaintiff as a waiver, then the question of waiver becomes one for the determination of the court, and the withdrawal by the court of this issue from the jury is not error.

Commissioner's Opinion, Division No. 1.

Error from District Court, Woods County; Arthur G. Sutton, Judge.

Action by C. J. Harrington against Great American Insurance Company to recover for

loss alleged to have been caused by hail to plaintiff's wheat crop. Judgment for plaintiff, defendant appeals. Affirmed.

Chase & King, for plaintiff in error.

Mauntel & Spellman, for defendant in error.

BENNETT, C. C. J. Harrington brought suit in a justice court of Woods county, Okla., against Great American Insurance Company, a corporation, to recover upon an insurance policy for an alleged loss to his crops by hail. Plaintiff recovered judgment and an appeal was taken by defendant to the district court of Woods county, where a trial was had before a jury. Again the plaintiff recovered and the insurance company has perfected its appeal therefrom to this court for review. The parties will be referred to, respectively, as plaintiff and defendant, as they appeared below.

So much of the plaintiff's bill of particulars as may be necessary to an understanding of this cause is in substance as follows:

Plaintiff alleges that the defendant is a foreign corporation licensed to do business in Oklahoma; second, that the defendant executed and delivered to him a policy of insurance covering his crop against loss by hail, a copy of which is attached to the petition; third, that on June 16, 1924, plaintiff's wheat crop, which was covered by the insurance policy, was struck by a heavy hail storm with the resulting damage of 12 per cent. of the crop; that the plaintiff has fully complied with the provisions of the policy with respect to notifying the defendant of said loss and hail storm, and that in response to said notice the defendant, through its agents, made an inspection of the crop so damaged, and that the defendant did then and there refuse to allow the plaintiff any loss under said contract of insurance. That the plaintiff again notified the defendant by letter informing it of said loss and damage, offering to submit proof of loss, and that thereupon again the defendant sent its agent to the fields of wheat and again pretended to make an examination and inspection of said loss, and again refused to allow plaintiff any compensation saying that it was satisfied by its examination and inspection, and refused further proof, or to consider the matter in any way, and refused unconditionally to award or allow plaintiff any compensation for the said loss, claiming the loss did not amount to 5 per cent.

Plaintiff further alleges and states that he has fully performed all the terms and conditions in said policy required of this plaintiff; that said plaintiff did not make the 60-day proof of loss because the defendant stated that it would not allow or pay any loss if proof by affidavit and witnesses were furnished, and knowing that such proof would not be considered by defendant; that the said hail storm destroyed 12 per cent. of the insured value of the crop; that the said defendant found itself to pay this plaintiff up to and including the sum of $1,600 if the said crop were damaged to such an extent; that the defendant has failed to perform the terms of said contract, by reason of which the plaintiff has been damaged in the sum of $192.

Defendant filed a general demurrer, which was overruled, and thereafter filed answer by way of general denial, and further admitting the execution and delivery of the policy and also denying that the wheat crop covered by said insurance policy was damaged by hail on June 16, 1924, or at any other time during the life of said contract, either to the extent contemplated in said policy, or to any extent whatsoever, and also admitting that it had received information of the loss claimed by plaintiff on his crop, and that, in response thereto, it inspected the same and found that there was no damage to the said crop, and therefore no liability. Defendant further says that it denies it refused proof of loss, but that it has been ready always to receive same. Defendant further declares the policy provides that there should be no liability thereunder unless the damage from hail should equal 5 per cent. or more of its insured value, and the defendant says that no such damage was suffered, and that the policy provides that, in case of loss or damage equal to 5 per cent., the defendant should not be liable, unless the plaintiff within 60 days after the happening of such loss should furnish proof of loss setting forth the number of the policy, location, description, and acreage of the land and the amount of damage, etc., and that this provision in the said policy was not complied with by the plaintiff, and that such provision of the policy "never was at any time waived by this company or its representatives"; that the suit was not brought within six months next after the date of the alleged loss, and that by the terms of the contract the plaintiff is barred from maintaining his action.

The substance of the testimony may be briefly stated as follows:

Plaintiff, C. J. Harrington: Witness states that in 1924 his crop of wheat was

covered by hail insurance policy, plaintiff's exhibit "A," which is introduced; that on June 16, 1924, he had a loss from hail; sent his claim to the Great American Insurance Company at Topeka, Kan. The company immediately sent one of its adjusters, Mr. Rainey, to whom the wheat was pointed out. He drove through the field and witness showed him the injured wheat; that he asked what the damages was. Witness told him 10 per cent.; that this was estimated by going over the field and counting in various places 100 straws, and then picking out the damaged ones. This was done in several places. Then the adjuster looked at it, but did not count any. The adjuster said he would settle by giving witness 7 per cent. if the policy were surrendered, but witness refused to settle under 10 per cent. and then asked the adjuster to send another adjuster to examine the wheat. This was done, and three other men came out and witness showed them the wheat. When they finished they said they could not find anything different from the other adjuster.

Cross-examination: That witness went over the field immediately after the hail storm, June 16th, and examined all the field. Art King was with witness during all the time. They counted 100 straws three or four times in order to estimate the damage. Witness notified the company of the loss by registered mail either the day of or day after the damage. Rainey, the adjuster, was there twice the same day. He arrived to look over the field. He came back and told witness that he could not find any damage or loss within the terms of the policy. Witness asked him to send another adjuster, and he did. A couple of days later they came. They drove out and examined some of the wheat. Witness showed them the damaged wheat alone where the same was being cut. Witness did not send them the sworn statement, but sent them a registered letter showing the loss; that the adjuster Rainey did not think witness had that much loss. He was there twice that day and did not question anything except the amount of the loss.

Artie King, witness for plaintiff, testified about the storm over the field June 16, 1924; that he went through the field, and that out of every 100 straws he counted there were from eight to twelve straws broken down. Went clear around the whole field and counted for loss a half dozen times, and it ran from 8 to 12 per cent. loss. The wheat was shattered off.

Cross-examination: Counted out 100 straws a half dozen times; took the drill rows and counted off these straws to find out what percentage was damaged and there were from 8 to 12 out of each 100 damaged. This was the day after the hail.

Herb Gold, witness for plaintiff, testified that he remembered the hail storm of June 16, 1924, that came from the northwest and moved southeast and struck the wheat of plaintiff, C. J. Harrington, on both those places; that he made a personal examination; that he stacked the wheat in question during that harvest; made no special examination to determine the exact damage, but noticed that the wheat was damaged; also observed that when it was pitched on the stack a lot of the wheat heads were broken and some of the wheat shattered out. That particular hail was peculiar in that the hail stones were a little flat and round; it was a driving storm. Witness observed the damage done and in going over the fields to and from meals and in moving from one stack to the other made a mental calculation of the amount of loss, and that it seemed to be from 10 to 12 per cent.

Cross-examination: Witness does not remember definitely the day of the storm, but does remember that harvesting of that particular wheat began three or four days later. Observed damaged heads on the ground. Witness was at home when the hail came and observed the hail stones; it was in the afternoon; that it was four days later when witness went over to help harvest the Harrington wheat.

D. W. Harrington, witness for plaintiff, made an examination to determine the amount of the loss from hail storm; examined it twice; once alone and then once with the adjuster. They walked through the fields. Adjuster said he could not find 7 per cent. I found 12 per cent. From examination of stalks it ran from 9 to 15 per cent. Some of it was shattered, some bent over and some clear on the ground. Made the examination in four places in west field and two in the east field. The loss ran altogether from 8 to 16 per cent.

Cross-examination: Made the examination about one hour after the storm. Some of the wheat was ripe and some was not; it was not quite ripe enough to cut. Witness went through the field with the agent Rainey the afternoon of June 19th. Examined the wheat at that time and counted it. After making the count witness put down results; made four counts in the east field. When witness went out with Rainey, the adjuster, he did not count. He never did

count. Just walked and talked and said there was not any damage. Adjuster was there the second time that day at 5:30 in the afternoon.

J. L. Rainey, witness for the defendant, that is, special agent and adjuster for defendant company, went to the Harrington farm June 20, 1924, to examine wheat claimed to have been damaged by hail. Witness said to Harrington, "Let's go down and find out what the loss is and count it out carefully," to which Harrington said for witness to go and look at it, that he knew what the loss was—10 per cent. That witness made an examination of the field, four counts by throwing a hat into the field, and where it would light would take that particular row and count 100 straws down the row. Did that four times. Witness found only one straw broken by hail in the count, but found others that were down from other causes. Grasshoppers had caused the damage. Witness works on a salary and made a careful survey to determine the loss. Found loss in middle field one-fourth of one per cent. In another count found no straws broken from hail. In one count there were a few bent over from grasshoppers. Witness found that the damage was caused by grasshoppers instead of hail. Witness looked about as he walked through the field to see if he could find any damage caused by the hail and could find none whatever. None in the east field. This was the 20th of June. The wheat was ready to harvest. There were some few green spots but the other was ripe. After witness made these examinations went back to see C. J. Harrington. Told him he could not find any hail loss.

"Q. You may state whether or not you told Mr. Harrington at that time that you found no loss sufficient to justify adjusting it under the policy? A. I did. Q. You may state whether or not you gave any other reason at that time for not paying the loss? A. I did not."

Harrington at that time asked for another adjuster, and witness secured another adjuster and sent him to make further examination.

Cross-examination: At that time, after witness had examined the crop, he told Mr. Harrington on behalf of his company that he denied liability on the ground that there was no loss.

M. C. Wycoff, witness for defendant: Witness was directed by Mr. Rainey, adjuster, to examine the wheat field of C. J. Harrington and made such an examination June 23rd. The wheat was being harvested at that time. Witness found a few straws that

had been broken by grasshoppers, but found no loss from hail. Examined it four or five times. The loss from hail would be less than one per cent. Told him that he found no loss. Did not go back any more. That was the last examination.

A. H. Roff, witness for the defendant: Was with Mr. Wycoff; could not find any loss from hail to speak of. There was a little hopper damage. Witness at no time found a hail loss equal to 5 per cent. in any of the fields. Some of the wheat was down from other causes, grasshoppers, black-rot, etc. It would not amount to over two per cent.

The foregoing reflects the testimony.

At the beginning of the testimony defendant objected to the introduction of testimony for that the bill of particulars stated no cause of action. Same was overruled. At the close of the plaintiff's testimony the defendant demurred on the ground that no proof of loss had been furnished within 60 days by plaintiff properly sworn to, and no legal excuse had been offered for his failure to supply it, and at the close of all the testimony the defendant moved for a directed verdict, for that the evidence was insufficient, and also for that the proof of loss had not been furnished by plaintiff within 60 days, all of which demurrers and motions were overruled and exceptions allowed. Thereupon the issues were submitted to a jury, whose verdict was for the plaintiff for $192, and after motion for new trial overruled, the case is appealed here.

The defendant in its petition in error assigns ten grounds, but its argument is confined to three substantive heads:

1. That said court erred in overruling plaintiff in error's objection to the admission of evidence on the part of defendant in error.

This involves the question of whether or not the petition states a cause of action. Defendant's first contention under this head is that plaintiff did not furnish proof of loss within 60 days. Plaintiff's petition states over and over again that he had complied with the provisions of the policy in notifying the defendant of said loss from hail storm, first, by a general letter, and second, by a registered letter. The evidence is that the plaintiff did not reserve a copy of these statements, and we do not know just how formal and complete they were except we do know from the evidence that they were not sworn to. There is an allegation also that the defendant in response to the

first notice made an inspection of said crop so damaged, and did then and there refuse to allow this plaintiff any compensation or pay any loss under the policy; that in response to the second letter, which was a registered letter informing defendant of the particulars of said loss and damage and offering to submit proof of loss, defendant again sent its agents and adjusters and made another examination and inspection, and refused to allow or award plaintiff any compensation for such loss upon the ground and claim **that the loss did not amount to 5 per cent.** After this allegation the plaintiff avers that he did not make the 60-day proof of loss because the defendant stated that it would not allow or pay any loss, if proof were furnished, and that plaintiff, knowing that the same would not be considered, did not furnish the same. It seems clear, therefore, that the facts are these: That the plaintiff immediately notified the defendant twice, and the defendant immediately responded and made an examination of the plaintiff's fields and alleged damage, and notified him at the close of such examination that there was no loss whatsoever, and that there was; therefore, no liability under the policy. This statement is, in effect, and in substance, made clear by the plaintiff and his witnesses, and in addition it is made absolutely conclusive by the adjuster for the defendant, Mr. Rainey, in the following words on direct examination:

"Q. When you went back to see him, what conversation did you have with him? A. I told him I couldn't find any hail loss. * * * Q. You may state whether or not you told Mr. Harrington at that time that you found no loss sufficient to justify adjusting it under this policy? A. I did. Q. You may state whether or not you gave any other reason at that time for not paying the loss? A. I did not."

And on cross-examination:

"Q. You, at that time after you had examined it, told Mr. Harrington on behalf of your company that you denied any liability on the ground there was no loss? A. Yes, sir."

The testimony of the defendant is that this adjuster went down for the sole purpose of adjusting this loss and made, as he says, a thorough examination of the crop to determine the amount of loss. The only thing under discussion between it and the plaintiff was the amount of this loss, the plaintiff claiming 10 per cent. loss, and the adjuster, though offering to pay 7 per cent. at one time, finally declares that there was no loss and no liability, and that he must decline, for his company, to pay anything on

the sole ground that the plaintiff's crop was not damaged. **There was no mention of proof of loss or defective proofs of loss, or the absence of proofs of loss.** There was a clean-cut denial of loss, and a consequent denial of liability on the one fixed and definite ground, to wit, that the hail did not damage the plaintiff's crop.

Our first conclusion is that the offer to pay the 7 per cent. was a recognition of its liability followed by a withdrawal of such recognition, and then at the close of the final examination of the crop, a denial outright of liability based upon the contention that there was no damage.

"Broadly stated, the rule is that, if the company denies liability for a loss, and refuses to pay it either for that or other reason, placing its refusal on a definite ground other than want of proofs of loss or a defect in their form or substance, it waives the right to insist on the failure to make requisite proofs as a defense to an action on the policy. * * *" 33 C. J., page 32. (Citing Royal Ins. Co. v. Martin, 192 U. S. 149, 48 L. Ed. 385; Continental Ins. Co. v. Parkes, 142 Ala. 650, 39 So. 204; Yates v. Thomason, 83 Ark. 126, 102 S. W. 1112; Hartford Fire Ins. Co. v. Hammond, 41 Colo. 323, 92 Pac. 636; Taylor v. Glens Falls Ins. Co., 44 Fla. 273, 32 So. 887; Allen v. Phoenix Assur. Co., 12 Idaho, 653, 88 Pac. 245; Williamsburg City F. Ins. Co. v. Cary, 83 Ill. 453; Ohio Farmers' Ins. Co. v. Vogel, 166 Ind. 239, 76 N. E. 977; Sinclair v. National Surety Co., 132 Iowa, 549, 107 N. W. 184, and many other cases.)

The rule is further stated on pp. 33, 34, of C. J. vol. 33, as follows:

"More specifically, where the company, within the time for presenting proofs of loss, denies liability or refuses to pay the loss, it thereby waives the necessity for proofs; and it is generally held that a denial of liability or a refusal to pay not predicated on the failure to furnish proofs is a waiver of any objection on that ground, irrespective of whether the denial precedes or follows the time within which proofs should have been furnished, although there is authority to the effect that if such a denial or refusal is first made after expiration of the time for furnishing proofs, it does not waive the delay in furnishing them. Similarly a denial of liability or a refusal to pay on any other specified ground will be a waiver of objection on account of defects in the proofs furnished."

Proofs of loss as a condition precedent to the right to maintain an action on the policy may be thus waived. Shawnee Fire Ins. Co. v. Roll, 145 Ky. 113, 140 S. W. 49. Compliance with the statute requiring proof to be furnished within a certain time may be thus

waived. Dodge v. New York Life Ins. Co. (Mo. App.) 189 S. W. 609. If the company denies liability on the ground, that notice was not sent in time, it cannot defend on the ground that proofs of loss were not furnished. Hughes v. Central Accident Ins. Co., 222 Pa. 462, 71 Atl. 923.

The foregoing rule has been adopted and followed in Oklahoma. The third syllabus in the case of Federal Life Ins. Co. v. Lewis, 76 Okla. 142, 183 Pac. 975, is as follows:

"The provision in the insurance policy requiring proof of total disability to be furnished the company within a certain definite time is waived by the company denying liability within such time upon other grounds than failure to furnish proof of total disability."

In the above case the defendant denied liability to plaintiff upon the ground that he was not totally disabled, and therefore did not come within the protecting clause of the policy, and the proof was that when the plaintiff talked to the state agent with reference to his claim, plaintiff was informed by the agent that he (plaintiff) did not come within the clause protected and provided for in the policy, and "at no time did the agent inform him in regard to the proof necessary, nor what proof was required, nor that the company would furnish blanks to make out his proof thereon, but denied liability in that plaintiff did not come within that clause. The holding of the court in the foregoing case is based upon Oklahoma Fire Ins. Co. v. Wagester, 38 Okla. 291, 132 Pac. 1071, and American National Ins. Co. v. Donahue, 54 Okla. 294, 153 Pac. 819.

In the case of American National Ins. Co. v. Donahue, supra, plaintiff sued to recover upon an accident policy alleging that the assured had been accidentally killed. Defendant answered by general denial, and their first contention was that the plaintiff failed to either plead or prove that they furnished proof of death as provided in the policy.

"Plaintiffs admit that they furnished no proof of death as stipulated in the policy, but rely upon an alleged waiver, which they plead as follows: 'And the plaintiff would show that due demand was made, that they company refused and still refuses to pay said loss or any part thereof, and that said demand was made more than 30 days prior to the institution of this suit'."

The court bases its ruling in the case upon Okla. Fire Ins. Co. v. Wagester, supra, and says further:

"While we do not commend the loose and indefinite style of pleading a refusal to pay after demand that has been used in the case at bar, yet the exact point here raised, that plaintiffs have not pleaded a waiver, has been decided adversely to defendant's contention by this court in the very recent case of Continental Ins. Co. v. Chance, 48 Okla. 324, 150 Pac. 114, wherein almost the exact language was used in pleading a waiver that was used in the case at bar, and the court there said: 'While it would have been better to have alleged directly that defendant had "denied liability," instead of saying that it had "refused payment," yet the refusing of payment by a solvent insurance company is the equivalent to denying liability, and we think the rule that the facts relied upon to constitute the estoppel must be pleaded with definiteness and particularity is sufficiently complied with in pleading estoppel in a case like this, by simply alleging that payment had been refused, or, better, that liability had been denied.'

"The only evidence introduced as to the waiver of proof by the refusal of the company to pay the loss was the very brief statement of the plaintiff, Mrs. Donahue, who testified the suit was filed on March 27, 1912, which was more than 30 days after the death of her father, the insured, and that the company refused to pay the insurance 30 days after the demand was made. The company was represented at the trial by its attorneys, who did not cross-examine the witness, and made no inquiry whatever as to the nature of the demand or refusal and introduced no evidence on that point. Ought not this silence upon the part of the defendant be taken as conclusive that it was satisfied with the proof offered, as it saw fit not to deny it or gainsay it in any way? It does not comport with any idea of fairness, nor fill the requirements of a legal proceeding, which should have for its object the quest of the real facts, to permit the defendant to remain silent when it ought to speak out, and then be heard to complain here for the first time that the proof was not sufficient."

The foregoing case presents an instance which is much weaker in point of proof as to the waiver and immeasurably weaker in the matter of allegation of waiver than the instant case.

In the case of Atlas Assur. Co., Ltd., v. Leonard, 108 Okla. 150, 234 Pac. 771, Judge Riley, delivering the opinion of the court, says, at page 152:

"A waiver of notice of loss was sufficiently pleaded by plaintiff; a pleading of waiver of proof of loss, though not artfully or carefully drawn, was to some extent mentioned wherein the petition recites 'that he has complied with the terms of said policy with reference to notifying the defendant of the fire which destroyed said cotton, and with

an alternative allegation that defendant has waived said requirement by having sent an adjuster to the scene of the fire and loss and having made an offer of settlement to plaintiff.' Under the rule announced in Harn et al. v. Patterson, supra, E. B. Lilly, adjuster of the insurance company, having testified at the request of insurance company as to his investigation of the loss, we will regard the petition of plaintiff to have been amended to conform to the evidence adduced."

The rule in substance announced in Harn v. Patterson, 58 Okla. 694, 160 Pac. 924, is as follows:

An amendment of a plea which ought to have been allowed, if leave to make it had been asked in the trial court, to conform it to the evidence adduced without objection or by the adverse party, will be regarded in this court as having been made. (Citing Carson v. Butt, 4 Okla. 133, 46 Pac. 596; First National Bank of Mill Creek v. Langston, 32 Okla. 796, 124 Pac. 308; Love v. Kirkbride Drilling & Oil Co., 37 Okla. 804, 129 Pac. 858.

Judge Riley, in the Atlas Assurance Company Case, says at page 153:

"The company's conduct relative to the claim was sufficient to justify the belief on the part of insured that formal proof of loss would be waived. The company did not deny, through the adjuster, liability on the ground of failure to establish a loss. The company caused to be made, on its own account, an independent investigation of the loss. Cooley's Brief on Insurance, 3526: 'If the company investigates the loss on its own account and so conducts itself with relation thereto as to show a satisfaction with the knowledge thus obtained, or to induce reasonable belief in the insured that it is so satisfied, and does not desire formal notice or proof, it will amount to a waiver of such formalities'."

In the Atlas Case he says further:

"Slight evidence will raise a waiver against the insurance company when the equities are in favor of insured." (Citing numerous cases.)

It was contended in the Atlas Case by the plaintiff in error that proof of loss was not alleged in the petition of insured, nor proved in the trial. The court says at page 152:

"From an examination of the petition we find that plaintiff avers that he has complied with the terms of the policy with reference to notifying the defendant of the fire, and with an alternative statement to the effect that defendant has waived said requirements, and concluding with a general allegation of performance of the conditions precedent to maintaining the action."

The pleading was held sufficient.

In the case of St. Paul Fire & Marine Ins. Co. v. Mittendorf et al., 24 Okla. 651, 104 Pac. 354 (which was a suit on a hail insurance policy), the court in the fourth paragraph of the syllabus holds:

"Where, in an action on an insurance policy the petition alleged certain specific acts as a waiver of proof of loss, and in proof thereof uncontradicted evidence was introduced, without objection, sufficient to prove a waiver thereof upon other grounds, held, that the petition will be considered amended so as to conform to the facts proved, and a waiver so proved fairly in issue." (Emphasis ours.)

The court quotes from 16 Am. & Eng. Enc. of Law, at page 934, as follows:

"Since the conditions of a policy, a breach of which by the assured will give rise to a forfeiture, are inserted for the benefit of the insurance company, they may be waived either pending the negotiations for the insurance, or after such negotiations have been completed and during the currency of the policy, and this either before or after the forfeiture is incurred; and, since forfeitures are not favored in the law, the courts are always prompt to seize hold of any circumstances that indicate an election to waive."

The court at page 660 continues:

"But it is in effect contended that no question of waiver is before us, for the reason that the court did not charge thereon, and confined plaintiff to proof of loss as required by the terms of the policy as a condition precedent to his right of recovery. The point is not well taken. Examination of the record discloses that a waiver of said condition was pleaded by plaintiffs; that while they did not specifically predicate such waiver upon the fact that defendant received and retained the proofs furnished without objection, yet, as such evidence was introduced by them without objection, in proof of waiver, we hold that their petition was, in effect, amended so as to conform to said facts proved (Cap. Ins. Co. v. Bk. of Pleasanton, 48 Kan. 397, 29 Pac. 578; M. V. R. Co. v. Caldwell, 8 Kan. 168; Mitchell v. Milhoan, 11 Kan. 461), and thereby put a waiver, based upon that ground, fairly in issue. Had defendant objected to the introduction of said evidence for the reason that no waiver based upon that ground had been pleaded, plaintiffs would doubtless have amended so as to set it up. As it did not do so, but permitted the evidence to be introduced without objection, thereby treating waiver upon that ground as a proper issue, it is now too late to complain."

Even if the evidence of plaintiff did not clearly disclose that the proof of loss was waived within 60 days, or if his pleadings were informal, since the parties proceeded with the trial and defendant introduced evi-

dence clearly supplying the omission in the proof, this could not help defendant. Bower Venus Grain Co. v. Smith, 84 Okla. 103, 204 Pac. 265; Oklahoma Hospital v. Brown, 87 Okla. 46, 208 Pac. 785; Stafford v. Bond, 106 Okla. 173, 233 Pac. 185; Bales v. Breedlove, 96 Okla. 280, 222 Pac. 542; Smith v. Cornwell et al., 101 Okla. 86, 223 Pac. 154.

Perhaps, logically, the contention by the defendant that the court erred in withdrawing the question of waiver from the jury should be discussed under another heading, but since the case of St. Paul Fire & Marine Ins. Co. v. Mittendorf, supra, decides that question, it might as well be referred to here. The court says at pages 661-662 in the opinion:

"It follows that, as there was no conflict in the evidence, the question of waiver was one of law for the court (Helvetia Swiss Fire Ins. Co. v. Edward P. Allis Co., 11 Colo. App. 264, 53 Pac. 242; Dwelling House Ins. Co. v. Dowdall, 159 Ill. 179, 42 N. E. 606; Spring Garden, etc., Ins. Co. v. Evans 9 Md. 1, 66 Am. Dec. 30; Pretzfelder v. Merchants', etc., Ins. Co., 123 N. C. 164, 31 S. E. 470, 44 L. R. A. 424."

2. It is next contended by the defendant that there is neither allegation nor proof that the waiver occurred within the 60 days. The petition of the plaintiff says that he did not make the 60-day proof of loss because the defendant stated that it would not allow or pay any loss, if proof by affidavit and witnesses were furnished, and knowing that such proof would not be considered by the defendant. If we interpret these words to mean that he was prevented from complying with the 60-day proof after the expiration of the 60-day period, it would lead to an absurdity. That he was prevented during the 60 days from complying with the 60-day proof is the apparent and obvious meaning of the language and is too clear for argument. The statement that the evidence does not show the waiver within the 60 days is at variance with all the proof in the case. The proof is that the hail was on the 16th of June. The first examination by the adjuster was on the 20th of June; part of the wheat was being harvested, and before the harvest was complete the other adjuster made his examination, and after the adjuster's examination he had the conversation with the plaintiff, wherein he told the plaintiff that there was no loss and therefore no liability, and consequently he would not pay.

3. The next assignment argued by the defendant is that the court erred in overruling the demurrer of the defendant at the close of all the testimony. We have examined the evidence with care, and while there are many points of contradiction, we are convinced and so hold that there is abundant testimony which warrants a recovery, and the defendant's contention is not well taken.

Under the third assignment the defendant complains of instruction No. 3, given by the court to the jury, the objection being that it withdrew from the jury everything except the question as to whether or not there was a loss within the terms of the policy, and if there was such a loss, the amount of damage. It is not necessary to argue at length this position. Defendant's adjuster, clothed with the apparent power to deal with and settle this controversy, testified over and over again that there was no loss, no damage, no liability, and on that account he would not pay the plaintiff. This denial was unequivocal, and no reasonable man could draw any inference therefrom except that the company would not pay because there was no loss. There was nothing for a jury to pass upon. That was plaintiff's allegation in his petition. That was the defendant counsel's statement in his opening address; that was the evidence of the defendant's adjuster. The question of waiver, therefore, was one for the court, and which he promptly and properly decided, and the only question remaining was whether the damage amounted to 5 per cent. of the value of the crop, and if so, how much was the damage? That matter was left to the finding of the jury under proper instruction. For all of which reasons, it is adjudged that the finding and judgment of the court below should be, and the same is hereby affirmed.

TEEHEE, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 33 C. J. pp. 32, 33, 34, §694; 4 A. L. R. 1298; 35 A. L. R. 267. (2) 33 C. J. p. 87, §800. (3) 33 C. J. pp. 137, 138, §870.