Argued March 1, affirmed June 11, 1929.

JOHN FAGERLIE *v.* NEW YORK LIFE INSUR-
ANCE CO.

(278 Pac. 104.)

486

For appellant there was a brief over the name of *Messrs. Huntington, Wilson & Huntington,* with oral arguments by *Mr. B. S. Huntington* and *Mr. Walter M. Huntington.*

For respondent there was a brief over the name of *Mr. J. G. Arnold,* with an oral argument by *Mr. Nicholas Jaureguy.*

BEAN, J.—The plaintiff alleges two causes of action. The first is based upon a life insurance policy dated August 17th, 1920, for $5,000 in case of death, which provides that if the insured becomes wholly and permanently disabled, the company will pay as disability benefits annually, one tenth of the face of the policy, and also waive certain premium payments.

This will be referred to as the first policy. Under the terms of this policy total and permanent disability is defined as disability by which insured "has become wholly disabled by bodily injury or disease, so that he is and will be presumably thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days.

The second cause of action is founded upon a life insurance policy dated May 16, 1923, for $3,000 in case of death, which provides that if the insured becomes wholly and permanently disabled the company will pay each month one per cent of the face of the policy and also waive certain premium payments. Under the terms of this policy total and permanent disability is defined as follows:

"Disability shall be deemed to be total whenever the insured becomes wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit, and under this contract disability shall be presumed to be permanent after the insured has been continuously so disabled for not less than three months and during all of that period prevented from engaging in any occupation for remuneration or profit."

On February 17, 1925, the plaintiff was shot, a bullet passing through his left lung. On June 30, 1925, defendant received from plaintiff a statement of claim for disability signed by himself and accompanied by a statement signed by his physician, Dr. Fred J. Ziegler. Plaintiff's statement referred to the second policy by number, date and amount, and stated that he was totally disabled at the present time. The

cause of the disability was "shot through lung and sides." That the disability began February 17, 1925; and gave the name of his attending physician and stated that his disability had prevented him from engaging in any occupation whatsoever for remuneration or profit since February 17, 1925.

The attending physician's statement stated practically the same facts as contained in plaintiff's statement, and as follows: "Is the insured wholly disabled at the present time? A. Yes." That he had been prevented by reason of disability from engaging in any occupation whatsoever for remuneration or profit, since February 17, 1925. In answer to the question:

"What is your opinion as to whether or not the insured by reason of his disability will be permanently, continuously and wholly prevented thereby for life from pursuing any and all gainful occupations? A. Not permanently disabled. Lung chest wall was opened and drained and there will probably be a permanent weakness in that lung."

About June 26, 1925, the plaintiff was furnished with printed blanks by the defendant company at the local office of the treasurer of the defendant. On the same date that plaintiff obtained these printed blanks the local office of the defendant company wrote the following letter to its home office:

"File C.
"S. C. Beckley, Secretary,
    "Committee on Disability Claims.
"Dear Sir:
                "Re: Policies Nos. 6808232
                                    8458372
                                —Johan E. Fagerlie
    "The above insured called at the office today and advised us that he has been totally disabled since

February of this year, making inquiry regarding the Disability provision in his policies. We gave him Forms Nos. 1 and 2 for completion.

"We understand that the insured was a government detective and that he was shot and severely wounded in a liquor raid last February, from the effects of which he is still suffering.

"Very truly yours,

"R. A. Durham, Cashier.

"By ————————————."

The printed forms which at that time were handed to plaintiff consisted of one form known as "Insured's Statement" and one form known as "Attending physician's statement." These forms were filled out by the plaintiff and his attending physician and returned to the local office of the company about June 30th, 1925. Every question asked by the company on this form was answered by the plaintiff. The physician also answered every question asked by the company.

The agreement of the company contained in the first policy to pay one tenth of the policy per annum during the endowment period if the insured becomes wholly and permanently disabled, is by the terms of the policy "subject to all of the terms and conditions contained in section I hereof." Section I, so far as material, is as follows:

"Whenever the Company receives due proof * * that the insured, * * has become wholly disabled by bodily injury or disease, so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days * * ."

The agreement of the company contained in the second policy to pay the insured one per cent of the

face of the policy each month during the lifetime of the insured and also to waive the payment of premiums if the insured becomes wholly and permanently disabled, "is subject to all the terms and conditions contained in section I hereof." These conditions of Section I are as follows:

"Disability Benefits shall be effective upon receipt at the Company's Home Office, before default in the payment of premium of due proof that the Insured became totally and permanently disabled after he received this Policy and before its anniversary on which the Insured's age at nearest birthday is sixty years."

The statement of the insured and his physician were handed to the local office of the company which then wrote to the home office as follows:

"File C.               June 30, 1925.
"S. C. Beckley, Secretary,
  "Committee on Disability Claims.
"Dear Sir:
      "Re: Policies Nos. 6808232
                    8458372
                 —Johan E. Fagerlie
  "In further reference to our letter of June 26th, we now attach hereto Forms Nos. 1 and 2 completed by the above insured and by his attending physician.

  "We are obtaining an Inspection Report in this case, which will be forwarded to the proper department when received.
           "Very truly yours,
              "R. A. Durham, Cashier,
                 "By ———————————.''

About six weeks later plaintiff received a letter from the local office which, among other things, stated, with reference to the first policy, now involved, as follows:

"Our Home office advises that, from the evidence submitted and from information obtained by the company, it does not appear to the company that you are wholly and permanently disabled within the meaning of the provision in your policy No. 6808232 referring to disability benefits; it does not appear that you will be permanently, continuously and wholly prevented thereby, for life, from engaging in a gainful occupation. Claim for disability benefits under this policy is therefore disallowed. This policy does not provide, as does your policy No. 84583272, that total disability for not less than three consecutive months is presumed to be permanent.

"Very truly yours,

"R. A. DURHAM, Cashier.

"By NIELSEN."

Defendant recognized the statements of plaintiff as proof of total disability covered by the second policy and on July 7, 1925, paid $90 covering the income payments provided for by the second policy for the months of May, June and July, 1925. Thereafter defendant paid plaintiff $30 per month commencing with August, 1925, to and including April, 1927, and waived the annual premium of $99.33 on the second policy, which fell due May 1, 1926.

The defense to the first cause of action claimed by defendant briefly stated, is that the defendant never received the proof required by the first policy as a condition precedent to the right of plaintiff to disability benefits under that policy and plaintiff has never been wholly and permanently disabled, as defined by the first policy. The defense of the company to the second cause of action, as claimed by it, briefly stated, is that:

"The defendant has fully paid and discharged all its liabilities on account of said second policy; since April, 1927, the plaintiff has not been wholly and

permanently disabled as defined by the second policy and no liability has been incurred under said policy subsequent to said date."

The first assignment of error is that the court erred in refusing at the close of the testimony to direct the jury to return a verdict in favor of defendant upon the first cause of action and in refusing, at the time the case was submitted to the jury by the court, to instruct the jury, as requested by defendant, to return a verdict for the defendant upon said first alleged cause of action.

The plaintiff, at different times submitted to medical examinations by the company for the purpose of determining his disability status. The insurance company at no time pointed out to the plaintiff any defect in the form or contents of the proof of loss submitted by the insured nor informed him that any document thereof furnished by him was deficient in any particular, but at all times denied liability on the ground that the plaintiff was not, as a matter of fact, permanently and totally disabled.

At the trial the plaintiff's attending physician, Dr. Ziegler, stated that in using the expression "permanently disabled" he meant to convey the impression that at some time the plaintiff might be able to perform some light work.

Plaintiff contends that the proof of loss submitted in the case was sufficient.

It is stated in 33 C. J. 17, as follows:

"The object of the proofs is to furnish the company with the particulars of the loss and all data necessary to determine its liability and the amount thereof."

In his examination in chief, Dr. Ziegler stated, in regard to his answer in his statement as attending

physician, furnished to the company, that the insured would "probably be able to do certain kinds of light work within the next few months." That was his opinion at that time. He thought that was when the insured called upon him for the statement and did not remember whether he had seen the plaintiff since or not. In answer to the question, "What do you say would be the effect of a reasonable amount of exercise upon the plaintiff? A. I don't think it would be harmful at all." And on cross-examination, the doctor, explaining the kind of work he thought plaintiff could do, "would be something,—either he would have some motion—some physical exercise, or he would have some muscular exercise and body exercise; where he would be out in the open where he would be walking, bending over or exercising his body, like a park watchman." He was not sure he could do that. That any extraordinary fatigue would be out of the question.

In regard to his meaning of the statement as to total disability the doctor stated "well, a total disability is a man who isn't able to do any work. Q. Any at all? A. That is what I would think."

Counsel for plaintiff contends that the plaintiff is not bound by the literal statement of his physician. In the present case it appears that Dr. Ziegler was unfamiliar with the technical meaning of the terms employed in the policy and in his statement.

■ The authorities seem to agree that a statement of the physician appearing in the proof of loss, while evidence against the insured, is not absolutely binding upon him, but the same may be explained or corrected. 33 C. J., page 18, Section 666, states the rule as follows:

"As against insured or the claimant under the policy, however, the notice and proofs are *prima facie* evidence of the statements contained therein, and they are binding on him unless withdrawn or corrected, or contradicted, or explained."

There is contained in this section the further statement upon which defendant replies as follows: "And the contents of the notice or proofs cannot be corrected or denied for the first time at the trial of an action on the policy": This is based upon the cases of *Campbell* v. *Charter Oak F. & M. Ins. Co.*, 10 Allen (Mass.), 213, opinion rendered in 1855 and *Irving* v. *Excelsior F. Ins. Co.*, 14 N. Y. Super. Ct. 507, decided in 1857.

If the additional statement and opinions referred to mean that the statement of the physician in the present case could not be explained by the sworn testimony of Dr. Ziegler as to what he meant by "permanent disability," then we are bound to conclude they are not in conformity with the modern overwhelming weight of authority. Upon principle we think the weight of authority should be favored.

In *Denver L. Ins. Co.* v. *Price,* 18 Colo. App. 30 (69 Pac. 313), it appears that a physician making proof of death of insured stated that he died of paralysis of the heart, due to an overdose of phenacetin, a narcotic, the use of which was prohibited by the policy. It was held that the act of the beneficiary in answering a question in the proof of loss, as to the cause of death, by referring to the physician's statement, did not estop her from denying that the physician stated the true cause. See, also, *Redmond* v. *Industrial Ben. Assn.,* 150 N. Y. 167 (44 N. E. 769); *Barker* v. *Metropolitan Life Ins. Co.,* 198 Mass. 375 (84 N. E. 490); *Hancock Mut. Life Ins.*

*Co.* v. *Dick,* 117 Mich. 518 (76 N. W. 9, 44 L. R. A. 846).

Ordinarily any evidentiary statement can be explained. We see no reason why the doctor could not explain what he meant by his statement, as well as any witness in court could explain the meaning of his testimony, a right which a witness always has. The doctor's certificate is short, and his conclusion does not seem to agree with the law, as found in the books. It is not claimed that the certificate was in fact false.

It is plainly alleged in the plaintiff's complaint that plaintiff was totally and permanently disabled by being shot with a pistol bullet through his left lung, so that he has been ever since February 17, 1925, and now is, and will be, permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit. The complaint was filed on the twenty-ninth day of September, 1927. It is manifest from the correspondence of the company that it understood that the plaintiff claimed to be wholly and permanently disabled. It was impossible for the defendant to be misled by the issues. The plaintiff alleges in his complaint as follows:

"That said proof was accepted by the defendant as a compliance by the plaintiff with section I of said policy and contract of insurance, and no objections have been made by the defendant to the form or contents of said proof or the manner of the service thereof."

By the letter of the company of March 3d, 1926, it stated in substance:

"Referring to your letter of the 17th instant please say to the insured that, if total disability continues until the next anniversary of the policy, August 7th, 1926, and if at that time it appears to be presumable

that total disability will be permanent, the company will be disposed to favorably reconsider the question of waiving payment of the premium for the insurance year beginning August 7, 1926, and of paying the first disability income of $500 as at August 7, 1926."

It seems that there was no question but that the plaintiff was totally disabled. It is the contention of defendant apparently that a longer time of the existence of total disability should continue under the terms of the first policy than under the terms of the second policy. When we refer to Section I of the first policy, quoted in substance above, we find that when the company receives due proof that the insured has become wholly and presumably permanently disabled, as indicated therein, and that such disability has existed not less than sixty days, then the company will waive payment of the premium for the ensuing insurance year and one year after the anniversary of the policy next succeeding the receipt of such proof, the company will pay the insured one tenth of the face of the policy. The clause, "such disability has then existed for not less than sixty days," seems to be given no consideration by the company. The company did not deny liability for want of proof of permanent disability but the denial was based upon the proof and other information.

■ The rule in regard to proof in such cases is stated in *Schmurr* v. *State Ins. Co.* by former Mr. Justice Bean, 30 Or. 29 (46 Pac. 363), as follows:

"The law is settled that where the assured, in attempting in good faith to comply with the provisions of a policy, furnishes to the insuring company, within the time stipulated, what purports and is intended to be proof of loss, the company must point out particularly any defects therein if it intends to

rely upon them. If it fails to do so, objection cannot thereafter be made to its sufficiency.''

See 33 C. J. 32, § 694 et seq.; 7 Cooley's Briefs on Insurance (2 ed.), p. 5943; *Great American Ins. Co.* v. *Harrington,* 127 Okl. 13 (259 Pac. 582); *Davis* v. *Yorkshire Ins. Co.,* 221 Mo. App. 798 (288 S. W. 80).

■ Defendant assigns as error the refusal of the court to give the following instruction requested by defendant:

''Total disability under the meaning of this policy (policy described in the second cause of action alleged in the complaint) is such disability as precluded the insured from engaging in any occupation which he is otherwise qualified to perform for remuneration or profit.''

And the giving in lieu thereof the following instruction:

''On the other hand, if you find from the evidence, ladies and gentlemen, that having due regard for care and prudence, he could carry on some occupation for remuneration or profit, or will be able to in the future carry on some occupation for remuneration or profit, then you cannot say that he is totally and permanently disabled.''

It is contended that the charge is misleading in that it assumes that the definition of total and permanent disability is the same in the two policies and further, that it is not a correct definition of total and permanent disability under either policy, but allowed the jury to speculate upon what would be reasonable care and prudence in the future in connection with plaintiff engaging in any occupation. As we view the matter the controversy is not so much as to the difference in the definition of permanent disability in the two policies, but rather in the rule mentioned in

the policies for ascertaining the same. As far as we can see, total disability under one policy is the same as total disability under the other.

■ Under the policies involved in this case, the proper test of disability is to determine whether the insured can do sufficient work so that he may engage in some occupation for remuneration or profit: *Ozark Ins. Co.* v. *Winchester,* 116 Okl. 116 (243 Pac. 735); *Fitzgerald* v. *Globe Indemnity Co.,* 84 Cal. App. 689 (258 Pac. 458); *Hagman* v. *Life Assurance Co.,* 214 Ky. 56 (282 S. W. 1112); *Metropolitan Life Ins. Co.* v. *Bovello,* 56 App. D. C. 275 (12 Fed. (2d), 810, 51 A. L. R. 1040). See notes in 51 A. L. R. 1048; 41 A. L. R. 1376; 37 A. L. R. 151; 24 A. L. R. 203.

In the annotations to the case cited in 51 A. L. R., at page 1049, we read the following:

"Total disability is any impairment either of the body or the mind rendering it impossible for the disabled person to follow continually any substantial gainful occupation; it is to be deemed permanent whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it. *Starnes* v. *United States* (1926, D. C.), 13 Fed. (2d) 212."

In annotations at page 1376, 41 A. L. R. we find thus:

"As stated in the earlier annotations, the weight of authority supports the view that provisions in accident policies for indemnity in the event the insured is totally or wholly disabled do not require that the accident shall render the insured absolutely helpless, but such provisions are construed as meaning such a disability as renders him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. See, in support of this proposition, *Booth* v. *United States*

*Fid. & G. Co.* (1925), 3 N. J. Misc. Rep. 735 (130 Atl. 131).

In *Hagman* v. *Equitable Life Assur. Soc.*, 214 Ky. 56 (282 S. W. 1112), the syllabus reads as follows:

"Where as soon as insured was injured, insurer's agent was notified, and came to see him, and knew about his condition, and insured filled out and sent to insurer all blanks they sent to him, and papers which insured sent gave insurer notice of the facts, insurer's contention that proper notice was not given it cannot be sustained."

The policies do not contemplate that if the insured is physically able to possibly do some light work, he is not totally disabled, unless such work may be performed in the exercise of common care and prudence: 6 Cooley's Briefs on Law of Insurance (2 ed.), pp. 5538, 5539; *Fitzgerald* v. *Globe Indemnity Co.*, 84 Cal. App. 689 (258 Pac. 458); *Metropolitan Life Ins. Co.* v. *Bovello*, 56 App. D. C. 275 (12 Fed. (2 ed.), 810, 51 A. L. R. 1040); *Lobdill* v. *Laboring Men's Mut. Aid Assn.*, 69 Minn. 14 (71 N. W. 696, 65 Am. St. Rep. 542, 38 L. R. A. 537).

This was plainly indicated by the charges given by the court to the jury. The court treated the original proof of loss as sufficient. It should be remembered that under the second policy payments had been made for a considerable period of time and then discontinued for the reason that the disability was no longer total. Under the first policy no payments had been made.

■ The assumption of defendant that there was no evidence relative to what care and prudence in the future might require is not borne out by the record. There was a divergence of opinion of the physicians as to the ability of the plaintiff to perform light or

other tasks. It ranged from that of Dr. Smith, who testified that "the man can never work again," and in the course of time would develop tuberculosis and that of Dr. Staub, who stated that plaintiff's nervous condition was getting worse and that he could not ever do anything that would mean "any type of physical exercise"; to that of Dr. White who stated the best thing the plaintiff could do was to "go to work." Dr. Ziegler, plaintiff's attending physican, being that a reasonable amount of light work might help plaintiff. The testimony therefore left for the jury to say, not whether plaintiff could possibly do a little work, but whether having due regard for care and prudence, he could carry on some occupation for remuneration or profit in the future. Reasonable care was fully explained to the jury by the evidence of the physicians.

We think the charge of the court covered the issues and fairly submitted the case to the jury. There was evidence in the case from which the jury might reasonably conclude that the plaintiff, by reason of the gunshot wound which he received, was rendered wholly disabled, so that he is and will be presumably thereby permanently and continuously prevented from engaging in any occupation for remuneration or profit. Under the circumstances of this case we think the original proof of loss satisfied the demands provided for in the policies. There was no error in refusing to direct a verdict for defendant.

Finding no error in the record, the judgment of the trial court is affirmed. AFFIRMED.

COSHOW, C. J., and BELT, J., concur.

BROWN J., took no part in the consideration of this case.