BERTHA KUNDIGER v. METROPOLITAN LIFE INSURANCE COMPANY.[1]

August 4, 1944.

Nos. 33,785, 33,803.

[1]Reported in 15 N. W. (2d) 487.

*Alric Anderson,* for plaintiff-appellant.
*Snyder, Gale, Hoke, Richards & Janes,* for defendant-appellant.

STREISSGUTH, JUSTICE.

Defendant issued to plaintiff's husband, Reinhold B. Kundiger, two weekly-premium or industrial life insurance policies, providing

for double indemnity for death by accidental means, subject to certain limitations. Plaintiff brought suit on the policies after her husband's death and recovered a verdict for both ordinary and accidental death benefits. The trial court, however, upon motion of defendant, ordered judgment for plaintiff notwithstanding the verdict for only the face amount of the policies. Plaintiff appeals from the judgment entered.

■ While plaintiff assigns as error certain instructions given by the court and its refusal to give others requested by her, these assignments of error must be disregarded, as the verdict was in plaintiff's favor and she made no motion for a new trial. She cannot complain of errors which did not operate to her disadvantage. 1 Dunnell, Dig. & Supp. § 418.

■ The double indemnity under the policies involved could accrue only if death "resulted, independently of all other causes, from bodily injuries caused solely by external, violent, and accidental means." An additional clause excepted death "caused or contributed to by disease or infirmity."

Whether the trial court erred in ordering judgment for only the principal amounts of the policies, without accidental death benefits, involves an inquiry as to whether the evidence, construed most favorably to plaintiff, is sufficient in law to support the verdict, and, if not, whether there is a reasonable probability that plaintiff can supply any deficiency in proof. 3 Dunnell, Dig. & Supp. § 5082; Eklund v. Kapetas, 216 Minn. 79, 11 N. W. (2d) 805; Mardorf v. Duluth-Superior Transit Co. 194 Minn. 537, 261 N. W. 177. For that purpose, the evidence of the plaintiff must be accepted as true and given the benefit of all reasonable inferences. Olson v. Byam, 176 Minn. 619, 224 N. W. 256; McGivern v. N. P. Ry. Co. (8 Cir.) 132 F. (2d) 213; 3 Dunnell, Dig. & Supp. § 5082. Neither the court below nor this court on appeal may assume the role of a jury, but must accept the verdict as final if it has reasonable support in the evidence.

Some of these principles were only recently invoked against the plaintiff here in a proceeding wherein she sought review of an order

of the industrial commission holding that an alleged accidental injury sustained by her husband neither caused nor accelerated her husband's death. See, Kundiger v. Waldorf Paper Products Co. 218 Minn. 168, 15 N. W. (2d) 486. She is now here with the jury's verdict in her favor on a similar though not identical issue, and consistency on our part, as well as continued recognition of the respective functions of court and jury, require that she be given the benefit of the same principles.

Viewed through a favorable lens, the record discloses:

Insured was 51 years of age at the time of his death on February 2, 1943. He had been employed for several years as a laborer at the Waldorf Paper Products Company, trucking heavy bales of paper and loading and unloading boxcars. In November 1941, a medical examination revealed that he had active and chronic leukemia in an advanced stage. Leukemia is described as an incurable and invariably fatal disease, ordinarily symptomized by an increase in the white blood corpuscles, enlargement of the spleen, and enlargement of the various lymphatic glands, subcutaneous and subserous hemorrhages, and a wasting, weak condition. While the disease is rare and its successful treatment apparently still an enigma to the medical profession, yet in these particulars leukemia differs only in degree from cancer, diabetes, and other diseases the names of which the medical profession can supply. Notwithstanding his affliction, insured continued in his employment until a week before his death. During 1942 he was regularly at work except for an absence of four weeks during which period he received X-ray treatments, and one week during which he was under observation and care of his physician.

On the evening of January 26, 1943, insured arrived home from work shortly before midnight. He was "hunched up" and had a painful expression on his face; he did not eat any lunch, as was his custom, but went to bed immediately. At 3:00 a. m. he awakened his wife, who then observed that his neck was swollen and that its left side was black and blue. She administered hot applications. At 7:00 a. m. she observed that his neck had swollen

considerably more, that the black-and-blue mark was larger, that his neck was stiff, that he was unable to move his head, and that he had quite a bit of trouble with his speech. On the following day, another witness observed not only the black-and-blue mark and swelling, but also two fresh scratches on insured's left shoulder.

On January 28, insured was examined by his physician, Dr. Shelby E. Stinnette, who observed the black-and-blue discoloration, the stiffness of the neck, the difficulty in speech, and that insured was suffering from intense pain. Hot applications and sedatives were prescribed by his physician, who continued to treat him at his home for an injury rather than for leukemia. Insured's condition became progressively worse, and on February 1 he was taken to a hospital, where he died on February 2. Dr. Stinnette, on direct examination, expressed his unqualified opinion that the cause of insured's death was "hemorrhage, due to trauma or injury." The doctor stated that the hemorrhage "was quite extensive all about the neck and over the shoulder and into the lungs and into the pleural cavities of the chest," and that insured's death "was due to the pressure above the throat causing his breathing to become more and more difficult, his speech almost impossible."

Dr. Roy C. Heron, deputy coroner for Ramsey county, in performing a post mortem on February 2, found that insured's neck was swollen, and that he had a blue ecchymotic condition from the chin down to the level of the clavicle on both sides. In exposing the lungs, Dr. Heron found the entire region around the lungs infiltrated with blood. He testified that he did not believe leukemia could have caused the condition, and that in his opinion the cause of death was anoxemia due to hemorrhage, anoxemia being an absence of oxygen, which in turn produces strangulation. In his opinion, the hemorrhage was due to injury, although he admitted leukemia contributed to the death to the extent "that a man with a leukemia is much more liable to suffer from hemorrhage if he has a trauma than one that has not a leukemia." By way of impeachment, defendant introduced the coroner's certificate, based

upon information given by Dr. Heron, reciting leukemia as the "immediate cause of death."

Dr. Robert M. Burns, an expert witness, testified hypothetically that, in his opinion, insured "died as a result of an injury which caused a hemorrhage and swelling and congestion into the tissues of the neck and down into the lungs."

■ Plaintiff was unable to prove when or where her husband sustained the injuries causing his swollen neck, the black-and-blue mark, or the scratches observed on his body, but such proof was not indispensable. The accidental origin of his injuries will be presumed without proof of a mishap. "Given death from violence, without more, decision must be that it was accidental." Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 567, 289 N. W. 557, 560; Konschak v. Equitable L. Assur. Society, 186 Minn. 423, 243 N. W. 691.

■ From the above facts as favorably recited, we must decide whether the proof justified a verdict of accidental death. We must necessarily disregard the impeaching testimony offered in cross-examination of plaintiff's medical witnesses, as well as the testimony of Dr. James S. McCartney, who testified on behalf of defendant, that there was no evidence of hemorrhage present on April 23 when he performed a post-mortem examination, and that death was due to lymphatic leukemia and not to trauma. A court is not justified in ignoring a verdict merely because witnesses for plaintiff may have made contradictory statements as to the cause of results established, nor because experts testified that death could not have been caused as contended by plaintiff. Davis v. A. T. & S. F. Ry. Co. 104 Kan. 604, 180 P. 195; Jaques v. Order of U. C. T. 104 Kan. 612, 180 P. 200; Kingsland v. Metropolitan L. Ins. Co. 97 Mont. 558, 37 P. (2d) 335. The fact that Dr. Heron's testimony on the trial was in conflict with statements previously given by him had a bearing only upon his credibility and the weight of his testimony, which were for the jury to pass upon. Mutual L. Ins. Co. v. Still (8 Cir.) 78 F. (2d) 748.

■ Preëxisting disease or infirmity as affecting liability for death benefits under accident insurance policies and accidental features of life insurance policies has been a fruitful field of litigation ever since these policies were first issued in America at the close of the Civil War. The decisions are legion. Note, 131 A. L. R. 240; 1 Appleman, Insurance Law and Practice, chapters 22, 24; 5 Couch, Cyc. of Insurance Law, § 1142; 29 Am. Jur., Insurance, § 996; Browning v. Equitable L. Assur. Society, 94 Utah 532, 570, 72 P. (2d) 1060, 80 P. (2d) 348 (exhaustive review of cases). No new question of law is here presented justifying any attempt at compilation and analysis of the authorities, especially in view of the uniform rules applied by this court in the cases that have come before it. 3 Dunnell, Dig. & Supp. § 4873. A leading case is White v. Standard L. & A. Ins. Co. 95 Minn. 77, 80, 103 N. W. 735, 736, 884, 5 Ann. Cas. 83, which involved an insurance policy containing provisions very similar to those here under consideration. The court laid down these rules:

"* * * if the injury be the proximate cause of death, the company is liable, but, if an injury and an existing bodily disease or infirmity concur and co-operate to that end, no liability exists. * * * in cases where the insured is afflicted at the time of the accident with some bodily disease, if the accidental injury be of such a nature as to cause death solely and independently of the disease, liability exists."

In Wolfangel v. Prudential Ins. Co. 209 Minn. 439, 441, 296 N. W. 576, 577, this court said:

"While this contract of insurance must be construed and applied as written, any construction so unduly restrictive that it would defeat the ends of accident insurance must be avoided. It is not to be supposed that a contract like this is limited in coverage only to those entirely healthy and free from all physical defects and deficiencies. Neither may it be said that coverage exists wherever accident has coöperated with physical defect or deficiency to pro-

duce death. * * * It will be seen that the problem is largely one of causation."

The rule of proximate cause, as applied to actions of negligence, cannot, however, be applied in its full scope to contracts of this nature. White v. Standard L. & A. Ins. Co. *supra*. This is true because under the parties' express contract a recovery can be had only if death resulted "solely" (not proximately) from injuries received through accidental means, and, if the insured's condition was a contributing cause, there can be no recovery. Ackermann v. Minnesota Commercial Men's Assn. 184 Minn. 522, 239 N. W. 229; Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557; Kingsland v. Metropolitan L. Ins. Co. 97 Mont. 558, 37 P. (2d) 335. The doctrine of proximate cause is applicable "only to aid in determining whether or not the loss was caused solely by the accident or act against which the indemnity was given." 45 C. J., Negligence, § 477, p. 900.

From the evidence, as we have summarized it, we cannot say that the jury was not authorized in concluding that the death of the insured "resulted, independently of all other causes, from bodily injuries caused solely by external, violent, and accidental means," and that it was not "caused or contributed to by disease or infirmity," within the terms of the policies. The conflicting claims of the parties were each supported by competent evidence. It was, therefore, a question for the jury to determine whether the accident was the sole cause of death or whether it was contributed to directly or indirectly by leukemia, with which deceased was afflicted. We refer to only relatively few of the many cases emphasizing the reluctance of the courts to interfere with verdicts in cases of this type: White v. Standard L. & A. Ins. Co. 95 Minn. 77, at p. 84, 103 N. W. 735, at p. 884, 5 Ann. Cas. 83 (opinion on application for rehearing); Wolfangel v. Prudential Ins. Co. 209 Minn. 439, 296 N. W. 576; Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557; Mair v. Equitable L. Assur. Society, 193 Minn. 565, 259 N. W. 60; Commercial Cas. Ins. Co. v. Stinson (6 Cir.) 111 F. (2d) 63; Scanlan v. Metropolitan L. Ins. Co. (7 Cir.) 93 F. (2d) 942;

Mutual L. Ins. Co. v. Still (8 Cir.) 78 F. (2d) 748; Preferred Acc. Ins. Co. v. Combs (8 Cir.) 76 F. (2d) 775; Rinaldi v. Prudential Ins. Co. 118 Conn. 419, 172 A. 777; Rebenstorf v. Metropolitan L. Ins. Co. 299 Ill. App. 71, 19 N. E. (2d) 420; Police and Firemen's Ins. Assn. v. Blunk, 107 Ind. App. 279, 20 N. E. (2d) 660; Kramer v. New York L. Ins. Co. 293 Mass. 440, 200 N. E. 390; Hoff v. Mutual L. Ins. Co. 266 Mich. 380, 254 N. W. 137; Modern Woodman Acc. Assn. v. Shryock, 54 Neb. 250, 74 N. W. 607, 39 L. R. A. 826; Shugart v. Metropolitan L. Ins. Co. 116 Pa. Sup. Ct. 359, 176 A. 546.

On this branch of the case we add only the comment of Mr. Justice Valliant in Fetter v. Fidelity & Casualty Co. 174 Mo. 256, 266, 73 S. W. 592, 595, 61 L. R. A. 459, 97 A. S. R. 560, where the issue was whether death was due to an accident rupturing a kidney and producing a hemorrhage or to preëxisting cancer:

"The genius of our law does not claim for it infallibility; it recognizes that there is an element of uncertainty that enters into every forensic contest, which human wisdom cannot always make certain, and its aim is to come as close to the right as the means at hand will permit. Under our system of jurisprudence the jury is the tribunal to which questions of this kind are submitted for determination, and with all their human liability to err we have never yet discovered any better tribunal for the trial of questions of fact even where highly scientific propositions are involved."

Defendant also urges that, as a matter of law, it was entitled to the judgment as directed because of the insufficiency of the proofs of death to show that the death of insured resulted directly and independently of all other causes from bodily injuries and was not caused or contributed to by disease. Under the double indemnity provisions of the policies of insurance, the accident resulting in death, and not the death itself, was the thing insured against, and submission of proofs of death by accidental means was a condition precedent to recovery of double indemnity. Wold v. State Mut. L. Assur. Co. 198 Minn. 451, 270 N. W. 150. It is therefore necessary that we examine the proofs of death submitted to deter-

mine whether they were sufficient in law to form a basis for imposing double liability on defendant.

The proofs of death, besides reciting the date of death, contained questions and answers as follows:

"4. *Cause of death* Leukemia intensified or aggravated by accident causing bodily injury.

"4 (a) *Duration of the last sickness* 8 days

"5. *Was death due to accidental means?* Yes

\* \* \* \* \*

"7. *When did the deceased first complain of or give other indications of his last illness?* Injured at work on Jan. 26, 1943."

To one of the policies there was attached a physician's statement, signed by Dr. Stinnette, containing the following questions and answers:

"7. *What was the cause of death?* Leukemia—contributed to by possible injury when a bale of paper fell back on his left shoulder and neck.
*Duration from personal knowledge* 2 years
*Duration from history given.* Possible injury 7 *days*
*Contributory or secondary causes* Hemorrhage into mediastinum
*(Duration)* 7 *days*

\* \* \* \* \*

"9. *How long had the deceased been ill when you were called to attend in the last illness?* 2 years"

The only purpose of requiring proofs of loss is to provide the insurance company with information from which it may form an estimate of its rights and liabilities and arrive at a decision whether to pay or not to pay. Knudson v. Anderson, 199 Minn. 479, 487, 272 N. W. 376, 380; Wold v. State Mut. L. Assur. Co. 198 Minn. 451, 270 N. W. 150, *supra;* Short v. Great Northern L. Ins. Co. 179 Minn. 19, 23, 228 N. W. 440, 441; O'Reilly v. Guardian Mut. L. Ins. Co. 60 N. Y. 169, 173, 19 Am. R. 151, 153; Minn.-N. W. Digest,

Insurance, Key No. 543; 33 C. J., Insurance, § 665. The requirement is to be liberally construed in favor of insured. 33 C. J., Insurance, § 665; Glazer v. Home Ins. Co. 190 N. Y. 6, 82 N. E. 727. It is satisfied where reasonable evidence is furnished indicating that the event has happened upon which liability of the insurer depends.

No particular form of proofs is necessary. Nor does "due proof" mean proof satisfactory to the insurance company, of which it is the sole judge. It is not the showing to the insurer, but the fact of death by accidental means, that creates the liability. Forman v. New York L. Ins. Co. 267 Mich. 426, 255 N. W. 222; Robertson v. Mutual L. Ins. Co. 232 Iowa 743, 6 N. W. (2d) 153. Whether death was by accidental means is the ultimate question for trial.

As said in Commercial Cas. Ins. Co. v. Stinson (6 Cir.) 111 F. (2d) 63, 68:

"The insurer may demand that the fact of death due to accidental causes be shown with reasonable definiteness and certainty and, if the proofs furnished failed to satisfy it of this fact, it may, by acting seasonably and in good faith, require further evidence, but the insurer, under the guise of demanding further proof, cannot arbitrarily object to the sufficiency of the claim. Some proof of death, due to accidental causes, was all that was required and if it also disclosed facts of which the insurer could avail itself as a defense to an action on a policy, this would not derogate from its sufficiency to establish the claim. Such disclosure might suggest to the insurer the propriety of refusing payment and withstanding suit but it would be no bar to the action, otherwise no suit could be brought until the parties had gone through an extra-judicial investigation resulting favorably to the insured," citing Charter Oak L. Ins. Co. v. Rodel, 95 U. S. 232, 238, 24 L. ed. 433; Forman v. New York L. Ins. Co. 267 Mich. 426, 255 N. W. 222.

■ If proofs of death are deemed insufficient by the insurer, it should object in reasonable time and point out defects so that proper proofs may be furnished. 7 Cooley, Briefs on Insurance (2 ed.) pp. 5886, 5943; 33 C. J., Insurance, § 694; Great American Ins. Co. v. Harrington, 127 Okl. 13, 259 P. 582; Davis v. Yorkshire Ins. Co. Ltd. 221 Mo. App. 798, 288 S. W. 80; Forman v. New York L. Ins. Co. 267 Mich. 426, 255 N. W. 222; Francis v. International Travelers' Assn. (Tex. Civ. App.) 260 S. W. 938.

"The law is settled that where the assured, in attempting in good faith to comply with the provisions of a policy, furnishes to the insuring company, within the time stipulated, what purports and is intended to be proof of loss, the company must point out particularly any defects therein if it intends to rely upon them. If it fails to do so, objection cannot thereafter be made to its sufficiency." Fagerlie v. New York L. Ins. Co. 129 Or. 485, 496, 278 P. 104, 107; and see, 33 C. J., Insurance, § 694.

Applying these rules here, we hold that the proofs of loss, though inexpertly framed, were sufficient to advise defendant of the fact that plaintiff was making claim for double indemnity, based upon death by accidental means, within the meaning of the policies. "Claimant's statement" showed that insured was "injured at work on Jan. 26, 1943," and asserted that his death on February 2, 1943, was "due to accidental means." Defendant could not have been misled by the further statement that the cause of death was "leukemia intensified or aggravated by accident causing bodily injury." That statement put defendant on notice of the existence of leukemia, upon which fact it subsequently based its defense against double indemnity. Defendant clearly was not prejudiced by the statement.

■ The further statement by the attending physician that the cause of death was "leukemia—contributed to by possible injury when a bale of paper fell back on his left shoulder and neck," was a mere statement of opinion, founded on the history of the case. It was required by the insurance company as part of the

proofs of loss, and cannot be considered as the voluntary act or admission of plaintiff. Robertson v. Mutual L. Ins. Co. 232 Iowa 743, 6 N. W. (2d) 153; Barker v. Metropolitan L. Ins. Co. 198 Mass. 375, 84 N. E. 490; John Hancock Mut. L. Ins. Co. v. Dick, 117 Mich. 518, 76 N. W. 9, 44 L. R. A. 846; Redmond v. Industrial Benefit Assn. 150 N. Y. 167, 44 N. E. 769; Fagerlie v. New York L. Ins. Co. 129 Or. 485, 278 P. 104.

■ The final claim of defendant is that it was entitled to judgment upon at least one of the policies because that policy was not surrendered to it prior to the commencement of the action. Under the policy referred to, defendant agreed to pay the amount stipulated therein "upon surrender of this Policy and evidence of premium payment hereunder."

The plaintiff, though requested to surrender the policy prior to commencement of her action, was unable to do so because it had been hypothecated by her to her husband's undertaker, who refused to surrender it to the agent of defendant. The policy was, however, offered and received in evidence. This was a sufficient compliance with the terms of the policy. The clause upon which defendant relies required no more than a surrender of the policy before payment. A provision requiring the beneficiary to surrender the policy itself before commencing suit, after denial of liability on the part of the insurer, would be so unreasonable as not to be recognized as a condition precedent, the policy being the source of the beneficiary's rights and her only evidence of such rights.

For the reason stated, we conclude that the verdict of the jury as rendered must be reinstated.

■ Defendant also appealed from the judgment. By its appeal, it challenges the allowance to plaintiff of the sum of $30 as expert witness fees of Doctors Stinnette, Heron, and Burns to cover their attendance at the trial. Such allowance was made by order of the trial court upon motion by plaintiff, according to recognized practice, and it is of no consequence that the names of and amounts paid to these witnesses were not included in the verified bill of

costs and disbursements, plaintiff's notice of taxation of costs having included notice that she would apply for an allowance of expert witness fees.

The other attack upon the allowance of these expert witness fees is that the witnesses testified "only on the issue of plaintiff's alleged right to recover the accidental death benefit amounts of the policies," upon which defendant prevailed. This presents a question which has become moot by reason of our decision on the merits of the case.

On plaintiff's appeal the judgment is therefore reversed; on defendant's appeal the judgment, insofar as it allows plaintiff expert witness fees, is affirmed.

