## MORRIS LEVIN v. THE PAUL REVERE LIFE INSURANCE COMPANY.

159 N. W. (2d) 186.

May 24, 1968—No. 40,534.

*Levin, Sinykin & Efron* and *Reinhold F. Hollender,* for appellant.
*Richards, Montgomery, Cobb & Bassford,* for respondent.

PETERSON, JUSTICE.

Defendant, The Paul Revere Life Insurance Company (hereafter "the insurer"), issued to plaintiff, Morris Levin (hereafter "the insured"), an accident and health insurance policy sometime prior to October 22, 1959, the date on which insured was injured in an automobile accident. The policy provided indemnity for, among other things, loss of time due to sickness or accidental bodily injury. The policy contained "RESTRICTIONS," two paragraphs of which are germane to the facts of this case:

"G. Indemnity shall not be payable for any loss or disability which shall be caused by * * * any disease or ailment originating, prior to the date of this policy. *Any disability caused directly or indirectly, wholly or in part, by any disease or ailment * * * shall be indemnified under this policy only as a disability due to sickness * * *.*

"H. The monthly indemnities provided by this policy for disability from accidental bodily injuries shall be paid so long as the insured lives and suffers continuous total disability from the date of the accident. *Monthly indemnities for disability from sickness shall not be payable after indemnities for disabilities from both sickness or accident collectively shall have been paid covering periods totaling five years in the aggregate.* Thereafter the policy will be continued for its monthly accident indemnities * * *." (Italics supplied.)

It is undisputed that the insured suffered a disabling injury in an automobile accident on October 22, 1959, and it is undisputed that defendant insurer had paid monthly indemnity to plaintiff insured for prior sickness and his present disability in the aggregate of 5 years. In dispute, however, is the fundamental issue of whether or not his condition of psychoneurosis and osteoarthritis contributed to or concurred in any present disability of the insured.

The trial court, sitting without a jury, in effect found that if plaintiff was in fact still disabled, such disability was caused "directly or indirectly, wholly or in part" by disease or ailment and not exclusively by the injury suffered in the 1959 automobile accident; it accordingly concluded that the insurer had fully discharged its insurance obligations to the insured. Plaintiff, contending otherwise, moved for a new trial or, in the alternative, for amended findings and conclusions to the effect that, even though he suffered from two conditions constituting "diseases or ailments," as a matter of fact one was not a contributing cause of his disability and the other was itself an aspect of the disability resulting from the accident, thus compelling a conclusion that the insured is entitled to monthy indemnity for such period of time, in excess of the 5 years, as he continued to be totally disabled as a result of the injuries sustained in the automobile accident. Plaintiff appeals from the order of the trial court denying his motion.

■ The question is fundamentally one of fact. If the trial court's finding on the critical fact issue is supported by competent evidence, it is conclusive against plaintiff insured, for the language of the policy is otherwise too clear to be disregarded by liberal construction. White v. Standard Life & Acc. Ins. Co. 95 Minn. 77, 103 N. W. 735; Kundiger v. Metropolitan Life Ins. Co. 218 Minn. 273, 15 N. W. (2d) 487; cf. Wolfangel v. Prudential Ins. Co. 209 Minn. 439, 296 N. W. 576.

The insured was a traveling salesman at the time of his injury. He claims inability to pursue that occupation now due to substantial limitation of motion in his neck as a result of injury in the 1959 accident. His treating physician, Dr. Harold Wexler, testified that the limitation of motion was between 25 percent and 50 percent, and that it was permanent. An orthopedist, Dr. A. Ross Lerner, testifying for the insured, was of the opinion that he had sustained soft tissue injuries of the neck and spine, totally disabling to him in the performance of his occupation. Drs. J. H. Strickler and Andrew J. Leemhuis, called by insurer, were of the opinion that the insured's neck was movable and presumably in a normal condition, and that the insured was not physically disabled.

All of the doctors agreed that there was a preexisting osteoarthritic condition of the cervical spine and, in addition, the insurer's doctors testi-

fied to the existence of a psychoneurosis.[1] Dr. Lerner had entered into insured's hospital record in 1959: "One must consider aggravation of pre-existing osteo-arthritis of the cervical spine." Dr. Wexler admitted that the insured's osteoarthritic degeneration may have retarded his recovery from the accidental injury, but felt it should be considered more as a normal phase of aging for a person of the insured's age than as a disease "in the usual sense." He acknowledged the possibility of a psychoneurosis but considered that it was precipitated by the accident. On the other hand, Dr. Leemhuis gave the opinion that any disability experienced since 1962 had been contributed to by "disease in the form of osteoarthritis and illness in the basis of the psychoneurosis existed which along with other factors in his personality were present." Dr. Strickler, similarly, based upon an examination of the insured in 1960, was of the opinion "that he has extensive osteoarthritis in his neck; that he had an accident which produced a strain in his neck area and this superimposed upon the osteoarthritic condition or disease"; and, based upon an examination one year later, he thought "that psychoneurosis was no doubt keeping him from working as a major factor."

We agree that a finding that osteoarthritic degeneration of the cervical regions of the spine and psychoneurosis were either a "disease or ailment" and that *either* of them "directly or indirectly, wholly or in part" caused the insured's disability would not be without evidentiary support. Conversely, a finding that the insured's preexisting osteoarthritic condition was merely a dormant and nondisabling abnormality and that neither it nor his present psychoneurosis was a concurring or contributing cause of the insured's present disability would likewise have evidentiary support.[2]

---

[1] The insured was involved in a subsequent accident in 1966, which would not be covered by this insurance policy. Dr. Wexler admitted that the later accident "has worsened his neck condition in that his neck symptoms were primarily if not exclusively on the right side and now they are on both sides."

[2] In addition to the Minnesota cases cited, see and compare: Todd v. Occidental Life Ins. Co. 208 Ore. 634, 645, 295 P. (2d) 870, 303 P. (2d) 492; LaBarge v. United Ins. Co. 209 Ore. 282, 292, 303 P. (2d) 498, 306 P. (2d) 380.

■   We think the findings of the able trial court on this most critical issue of fact might have been more precise and clear than they were. In relevant part, they state:

"III.   The plaintiff continues incapacitated but not largely or possibly at all by reason of the injuries received in the accident. His present condition is caused in whole or in part by arthritic degeneration and psychosomatic [or psychoneurotic] factors. Each constitutes a disease or ailment.

\*   \*   \*   \*   \*

"V.   Insofar as the disabling condition is caused by psychosomatic factors it is as real to the plaintiff as if the condition were actually caused as an injury by the accident itself.

"VI.   \* \* \* The disability in this case having ben caused directly or indirectly, wholly or in part by disease or ailment, the plaintiff is not entitled to further recovery under the policy."

The findings are unclear in two respects. First, although the court could have found under the evidence that there is no disability at all by reason of any injury suffered in the 1959 automobile accident, in which case the insured obviously would have no right to indemnity, it did not clearly do so. Its apparent finding that the insured suffered a psychoneurosis, "as real" as if it were "caused as an injury by the accident itself" instead suggests a finding that there might be an accident-incurred disability. Second, although the court could find, and seemingly intended to find, that at least the preexisting arthritic degeneration was a contributing cause to any disability presently suffered by the insured, so that such accident-incurred injury was not the independent and exclusive cause of insured's disability, we think such a crucial finding should be made with greater clarity. In the interest of justice in this case, and as a matter of sound practice for future cases, we will remand for clarification of the court's findings and disposition not inconsistent with this opinion.

We have considered all other contentions of plaintiff and find no prejudicial error in the trial proceedings.

Remanded.